UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DARRELL GUNN,

                Plaintiff,

-against-

SERGEANT "BILL", et al.,

                Defendants.

**OPINION & ORDER**

20-CV-1787 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

    Darrell Gunn ("Plaintiff"), currently incarcerated in Sing Sing Correctional Facility and proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against the following New York State Department of Corrections and Community Supervision ("DOCCS") employees: (1) Nurse Dave Lindemann ("Lindemann"); (2) Sergeant D. Mazzella ("Mazzella"); (3) Sergeant D. Malark ("Malark"); (4) Sergeant W. Roser, Jr. ("Roser"); (5) Nurse Carrie Soltish ("Soltish"); (6) Sergeant Stephan Petrie (sued as, "Pietre")("Petrie"); (7) Correction Officer Finn ("Finn"); (8) Correction Officer Esposito ("Esposito"); (9) Correction Officer Kendre Lyons ("Lyons"); and (10) Nurse Donna Collins ("Collins") (collectively, "Defendants"). (Doc. 14, "Am. Compl."). Plaintiff asserts claims for deliberate indifference to a serious medical need and excessive force in violation of the Eighth Amendment. (*See generally id.*).

    Plaintiff commenced this action on February 26, 2020. (Doc. 2). The case was assigned to me on April 7, 2020. (*See* April 7, 2020 Entry). Plaintiff, with the Court's permission, filed an Amended Complaint on October 7, 2020. (Am. Compl.). Defendants Finn, Lindemann, Lyons, Malark, Mazzella, Petrie, Roser, and Soltish answered the Amended Complaint on April 22, 2021. (Doc. 43). Esposito was terminated from the case following the initial pre-trial conference. (Doc. 50). Additionally, Plaintiff consented to dismissal of Lyons from the case because she was not

implicated in the events at issue and was served by mistake. (Doc. 69). Discovery was completed on July 5, 2022. (Doc. 60).

Defendants Finn, Lindemann, Malark, Mazzella, Petrie, Roser, and Soltish ("Movants") filed their motion for partial summary judgment, in accordance with the briefing schedule set by the Court, on October 31, 2022. (Doc. 73; Doc. 74, "Def. Br."; Doc. 75, "Lawrence Decl."; Doc. 76, "Soltish Decl."; Doc. 77, "Finn Decl."; Doc. 78. "Lindemann Decl."; Doc. 79, "Malark Decl."; Doc. 80, "O'Farrill Decl."; Doc. 81, "Lyons Decl."; Doc. 82, "Roser Decl."; Doc. 83, "Mazzella Decl."; Doc. 84, "Def. 56.1"). Movants seek summary judgment on Plaintiff's: (i) Eighth Amendment deliberate indifference claim against Collins, Lindemann, Soltish, Malark, and Mazzella; and (ii) Eighth Amendment excessive force claims against Lindemann, Finn, and Roser.[1] Movants do not seek summary judgment on Plaintiff's Eighth Amendment excessive force claim against Petrie. (Def. Br. at 7, n.2).

Plaintiff filed a "Statement of Disputed Facts" on September 28, 2022. (Doc. 70; "Plf. Disputed Facts"). Plaintiff also filed a "Motion to Strike Partial Summary Judgment" on December 5, 2022. (Doc. 87; "Opp."). The Court, in exercising its discretion, considers both documents as Plaintiff's opposition to Movants' partial motion for summary judgment.

---

[1] In addition to monetary damages, Plaintiff seeks declaratory and injunctive relief in the form of "a declaration that the acts and omissions described herein violated plaintiff's rights under the constitution and the laws of the United States." (Am. Compl. at ¶¶ 67-68). However, the Court need not consider this claim for declaratory relief because simply "ask[ing] the Court only to recognize a past wrong ... in the context of declaratory relief, does not in itself amount to that real and immediate threat of injury necessary to make out a case or controversy." *Morales v. City of New York,* 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Murdock v. Legal Aid Soc'y*, No. 14-CV-0508, 2015 WL 94245, at *4 (E.D.N.Y. Jan. 6, 2015) ("[C]ourts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs." (internal quotation marks omitted)).

Movants' motion for partial summary judgment was fully submitted upon the filing of their reply brief on January 5, 2023. (Doc. 88, "Reply"). For the reasons set forth below, Movants' partial motion for summary judgment is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from: (1) the Amended Complaint; (2) Defendants' Rule 56.1 Statement; (3) Plaintiff's opposition; (4) the declarations submitted in connection with Movants' motion along with the exhibits annexed thereto, which includes a transcript of Plaintiff's deposition, conducted on May 16, 2022 (Doc.75-1, "Gunn Tr.").

Plaintiff, at all relevant times, was a convicted prisoner. (Am. Compl. at ¶ 4). Between June 1, 2017, and June 5, 2017, Plaintiff was on a hunger strike and had not consumed any solid foods or liquids, nor taken his prescribed medications. (Am. Compl. at ¶ 20; Def. 56.1 at ¶ 8). Plaintiff was temporarily housed at Downstate Correctional Facility ("Downstate") in their Residential Crisis Treatment Program for mental health treatment. (Am. Compl. at ¶ 19; Gunn Tr. at 29:9-15; Def. 56.1 at ¶ 2). On June 5, 2017, Plaintiff was scheduled to be transported from Downstate to his housing facility, Green Haven Correctional Facility ("Green Haven"), but his weakened condition caused him to fall while walking from his cell to the transport area. (Am. Compl. at ¶¶ 4, 22, 24; Def. 56.1 at ¶ 4). Petrie and Correction Officer O'Farrill escorted Plaintiff to the Downstate hospital. (Am. Compl. at ¶ 23; Def. 56.1 at ¶ 4). The stories diverge as to what happened during this escort. Plaintiff maintains that Petrie and two other correction officers pulled him into the stairwell and dragged his limp body up and down the stairs, causing injury to several parts of his body. (Am. Compl. at ¶¶ 24-28, 33). Petrie denies these allegations. (Doc. 43 at 4-5, "Answer").

The parties agree that after the fall on June 5, 2017, Plaintiff was brought to the Downstate hospital and seen by Nurse Collins. (Am. Compl. at ¶ 30; Def. 56.1 at ¶¶ 5-6). Plaintiff testified that he told Collins he was "in pain" and that his wrist hurt. (Gunn Tr. at 52:10-53:3). He also stated that his wrists were visibly swollen and bleeding from handcuffs cutting into them. (Gunn Tr. at 52:12-53:23). Nurse Collins took Plaintiff's vitals, offered him food and liquids, and did not provide any further treatment or medication. (Am. Compl. at ¶ 30; Gunn Tr. at 51:4-11, 55:11-19; Def. 56.1 at ¶ 6).

Finn then escorted Plaintiff back to Green Haven, and Plaintiff did not complain of any injury during the escort. (Def. 56.1 at ¶ 11; Gunn Tr. at 57:24-58:7, 60:9-12). At the Green Haven facility clinic, however, Plaintiff had difficulty standing on his own. (Gunn Tr. at 65:17-19; Def. 56.1 at ¶ 13). Plaintiff testified that Nurse Lindemann grabbed him by the throat to keep him from falling. (Gunn Tr. at 65:11-14, 66:5-11; Def. 56.1 at ¶ 13). While there appears to be a dispute as to whether Plaintiff was grabbed by the throat or neck, the parties agree that Lindemann grabbed him for the purpose of keeping him from falling. (*Id.*; Lindemann Decl. at ¶¶ 5, 7). Plaintiff was then led into the clinic where he was placed in a chair with no wrist restraints. (Gunn Tr. at 62:4-22, 64:9-10). Lindemann and Finn instructed Plaintiff to stop speaking and refrain from moving his hands. (Gunn Tr. at 63:9-10, 64:16). Plaintiff alleges, and Defendants deny, that Lindemann and Finn grabbed his hands during this encounter. (Am. Compl. at ¶¶ 50-51; Answer at ¶¶ 50-51). Finn expressly denies having any physical contact with Plaintiff during his clinic examination. (Finn Decl. at ¶ 6). During Lindemann's examination, Plaintiff complained of the assault at Downstate, showed Lindemann bruises on his arm, and told him he was "in pain." (Gunn Tr. at 63:8-23, 66:25-67:2, 77:20-78:6; Lindemann Decl. at ¶¶ 9, 14). Lindemann completed an Ambulatory Health Record Progress Note ("AHR") documenting these complaints and ultimately

4

determined that Plaintiff did not require any first aid or pain medication. (Lindemann Decl. at ¶ 8, Ex. E).

On June 6, 2023, Plaintiff submitted a sick call letter to an unidentified correction officer at Green Haven. (Gunn Tr. at 79: 2-81:6). Plaintiff did not directly communicate with Sergeant Mazzella, the area supervisor at the time, regarding this sick call letter. (Gunn Tr. at 88:5-89:9; Mazzella Decl. at ¶ 5). Mazzella denies having ever received Plaintiff's sick call letter. (Mazzella Decl. at ¶ 5). The next day, Sergeant Malark ordered that Plaintiff be examined by clinic staff and directed them to take photographs and complete a "Inmate Injury Report" regarding the incident at Downstate. (Def. 56.1 at ¶¶ 21-22). Nurse Soltish examined Plaintiff and he complained of injuries to at least his feet, neck, shoulders and wrist. (Gunn Tr. at 96:12-13; Soltish Decl. at ¶ 7; Def. 56.1 at ¶ 23). Soltish found that Plaintiff had superficial cuts, bruises, and scratches on his wrist and arms, and determined that no first aid was needed. (Def. 56.1 at ¶ 22; Soltish Decl. at ¶ 6, Ex. E).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[2] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

(S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial. . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts. . . ." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

The Court is, of course, mindful that "[p]ro se litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

**ANALYSIS**

Plaintiff's claims proceed under 42 U.S.C. § 1983. That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021).

Plaintiff presents four factual predicates for recovery under the Eighth Amendment by way of § 1983. First, Plaintiff complains that Petrie used excessive force against him at Downstate. Second, Plaintiff alleges that Collins was deliberately indifferent to his serious medical need at the Downstate hospital. Third, Plaintiff alleges that Roser, Lindemann and Finn used excessive force against him at Green Haven's clinic. Fourth, Plaintiff claims that Lindemann, Soltish, Mazzella, and Malark were deliberately indifferent to his serious medical need at Green Haven's clinic. (*See generally* Am. Compl.) The Court addresses the claims at issue *seriatim*.

I. <u>Theory No. 1: Deliberate Indifference to a Serious Medical Need</u>

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (alteration in original)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020).

> The first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain.
> . . . .
> The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act while actually aware of a substantial risk that serious inmate harm will result.

*Id*. at *4-5 (internal citations and quotation marks omitted).

    A. <u>Deliberate Indifference (Collins)</u>

Plaintiff's claim for deliberate indifference against Collins at the Downstate hospital on June 5, 2017, fails as a matter of fact and law. As a threshold matter, the parties agree that Collins was not served with a copy of the summons or complaint. (Opp. at 2; Def. 56.1 at ¶ 7). However, in the interest of judicial economy, the Court considers now the viability of the deliberate indifference claim against Collins.[3]

Even if Collins were properly served, there is no factual dispute as to either prong of the test and Movants are therefore entitled to judgment on this claim for relief as a matter of law. Despite the various injuries listed alleged in Plaintiff's Amended Complaint (Am. Compl. at ¶ 37),

---

[3] Federal Rule of Civil Procedure 4(m) provides, in pertinent part, that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." After two attempts to serve Collins failed (Docs. 31, 62), Plaintiff did not seek an extension of time within which to serve Collins. The Court does not, however, dismiss Collins because of Plaintiff's failure to effectuate service in compliance with Rule 4(m). *See Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012) ("[A] district court abuses its discretion when, among other things, it dismisses a complaint *sua sponte* for lack of service without first giving notice to the plaintiff and providing an opportunity for her to show good cause for the failure to effect timely service.").

Plaintiff testified only that his wrists were visibly swollen and bleeding and that he told Collins he was "in pain" (Gunn Tr. at 52:10-53:23). Plaintiff's opposition provides further context that he sought treatment from Collins for "bruises and cuts." (Plf. Disputed Facts at ¶ 5). These injuries, as a matter of law, are not–without more–of a vintage that "might have produced death, degeneration, or extreme pain." *Vasquez v. Cty. of Rockland*, No. 13-CV-05632, 2020 WL 883514, at *13 (S.D.N.Y. Feb. 24, 2020) (internal quotation marks omitted); *see, e.g., Brown v. Annucci*, No. 19-CV-09048, 2021 WL 860189, at *5 (S.D.N.Y. Mar. 8, 2021) ("District courts in the Second Circuit have consistently held that bruises, lacerations, cuts, black eyes, and other superficial injuries are not sufficiently serious to support a deliberate indifference claim.") (quoting *Morehouse v. Vasquez*, No. 17-CV-04836, 2020 WL 1049943, at *18 (S.D.N.Y. May 4, 2020)); *Bonner v. NYPD*, No. 99-CV-03207, 2000 WL 1171150, at *4 (S.D.N.Y. Aug. 17, 2000) (holding that a swollen hand does not satisfy the objective component); *see also Rodriguez v. Mercado*, No. 00-CV-08588, 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (concluding that bruises to head, back and wrist were insufficient to sustain Eighth Amendment claim).

However, even if the injuries Plaintiff identified were sufficiently serious, there is no basis to conclude that Collins acted with "deliberate indifference" to his condition. She examined Plaintiff, offered food and water, and took his vitals. (Am. Compl. at ¶ 30; Gunn Tr. at 51:4-11, 55:11-19; Def. 56.1 at ¶ 6). Plaintiff did not articulate what further examination or treatment was needed or should have been provided. Accordingly, the record does not support a finding that Collin's decision not to provide treatment for Plaintiff's minor lacerations, bruising, and vague complaints of pain satisfy the second prong of the deliberate indifference inquiry.

There are no genuine issues of material fact regarding whether Plaintiff suffered a sufficiently serious deprivation of medical care—he did not. Movants' motion for summary

judgment on the deliberate indifference claim against Collins is therefore granted and the claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

        B.  <u>Deliberate Indifference (Lindemann and Soltish)</u>

Plaintiff's claims for deliberate indifference against Lindemann and Soltish with respect to his medical treatment at Green Haven's clinic fail as well.

After being transported to Green Haven on June 5, 2017, Lindemann examined Plaintiff for the same injuries. (Def. 56.1 at ¶ 19). Specifically, Plaintiff showed Lindemann bruises on his arm and told him he was "in pain" because of the assault by Downstate officers. (Gunn Tr. at 63:8-23, 66:25-67:2, 77:20-78:6; Lindemann Decl. at ¶ 9). Lindemann documented Plaintiff's complaints and concluded that Plaintiff did not require first aid. (Lindemann Decl. at ¶ 9). Plaintiff then brought these injuries to Soltish two days later. (Def. 56.1 at ¶ 23). Photographs taken on June 7, 2023 confirm Plaintiff's injuries consisted of bruising and scratches on various parts of his body. (Malark Decl. at ¶ 7, Ex. H.). Soltish described Plaintiff's injuries in an AHR and Inmate Injury Report as superficial cuts, bruises, and scratches on his wrist and arms. (Def. 56.1 at ¶ 22; Soltish Decl. at ¶ 6, Ex. E, ¶ 10, Ex. G). Soltish likewise determined that no first aid was needed. (Soltish Decl. at ¶ 6).

These injuries, namely cuts and bruises, as explained *supra*, are not sufficiently serious to support a deliberate indifference claim. *See, e.g., Garcia v. Furnia*, No. 12-CV-0924, 2014 WL 4685104, at *4 (N.D.N.Y. Sept. 19, 2014) (granting summary judgment where plaintiff suffered soreness, black eye, scrapes, headache, and blurred vision). However, even if the injuries presented to Lindemann and Soltish were sufficiently serious, there is no basis to conclude that the care provided to Plaintiff was inadequate. Plaintiff did not state what treatment was needed nor did he allege that any medical conditions resulted from this lack of treatment. Both Defendants examined

Plaintiff, documented his complaints, and determined that further medical treatment was not warranted. Nothing in the record suggests that Lindemann or Soltish were aware of–let alone disregarded–a serious medical need. *See, e.g., Abreu v. Farley*, No. 11-CV-06251, 2019 WL 1230778, at *12 (W.D.N.Y. Mar. 15, 2019) (granting summary judgment on Eighth Amendment deliberate indifference claim where "medical progress notes wholly undermine[d] Plaintiff's contention that he suffered a sufficiently serious" injury that was disregarded); *see also Riley v. Roycroft*, No. 16-CV-02227, 2017 WL 782917, at *7 (S.D.N.Y. Feb. 28, 2017) (dismissing Eighth Amendment deliberate indifference claim where medical notes reflected subjective conclusion that, despite plaintiff's requests, a brace was unnecessary).

Accordingly, there is no genuine dispute of material fact regarding either prong of the test and Movants are entitled to judgment as a matter of law on the deliberate indifference claims against Lindemann and Soltish.

C. Deliberate Indifference (Mazzella and Malark)

Plaintiff's deliberate indifference claims against Mazzella and Malark for failure to provide adequate medical care at Green Haven likewise fail. Plaintiff essentially claims that Mazzella and Malark, in their capacity as supervisors, failed to provide him with adequate medical resources to treat his serious medical need.

Specifically, Plaintiff claims that Mazzella "failed to do his duty . . . and take me to the hospital so I could get medical care." (Gunn Tr. at 87:17-22). This claim fails, however, because the record is devoid of evidence of Mazzella's personal involvement. As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). There is no evidence that Mazzella

12

received Plaintiff's request to go to the hospital on June 6, 2017. (Gunn Tr. at 88:5-89:9; Mazzella Decl. at ¶ 5). In the face of Mazzella's express denial of receiving any such request, Plaintiff's speculative testimony that a sick call letter submitted to an unidentified correction officer was delivered to Mazzella (Gunn Tr. at 88:12-89:2) is insufficient to raise an issue of fact and to avoid summary judgment. *See Brown v. Artus*, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009) (citing *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) and *Russo v. City of Bridgeport*, 479 F.3d 196, 210-11 (2d Cir. 2007)); *see also Brown v. Phipps*, No. 19-CV-04356, 2021 WL 3604664, at *5 (S.D.N.Y. Aug. 12, 2021) (a plaintiff's "self-serving testimony" is insufficient to defeat summary judgment in the face of documentary evidence adduced during discovery cited by defendants (citing *Deebs v. Alstom Transp., Inc.*, 346 Fed. App'x 654, 656-57 (2d Cir. 2009))).

Accordingly, summary judgment on the deliberate indifference claim against Mazzella is warranted based upon his lack of personal involvement in the alleged violation.

With respect to Malark, Plaintiff bases his deliberate indifference claim on allegations that Malark failed to provide him with a doctor. (Gunn Tr. at 98:23). However, the undisputed evidence shows that Malark provided adequate medical resources in response to Plaintiff's complaints of cuts and bruises. Malark ordered that Plaintiff be examined by the medical clinic staff and directed them to take photographs and complete a "Inmate Injury Report." (Def. 56.1 at ¶¶ 21-22). This order resulted in Plaintiff being examined by Nurse Soltish. (*Id*. at ¶ 23). Plaintiff's claim that he should have been seen by a doctor fails because a prisoner has no right to dictate the course of his medical treatment.[4] *See Johnson v. Newport Lorillard*, No. 01-CV-09587, 2003 WL 169797, at *3 (S.D.N.Y. Jan. 23, 2003); *see also Jackson v. Kaufman*, No. 13-CV-06544, 2015 WL 5521432, at

---

[4] To the extent Plaintiff also intended to assert this claim against Nurse Soltish for refusing to let him see a doctor, the same finding applies that it is not a cognizable claim because Plaintiff was not entitled to demand examination by a physician rather than a nurse. (Gunn Tr. at 95:19-22; Opp. at 6).

*11 (S.D.N.Y. Sept. 18, 2015) ("Plaintiff's apparent argument that he was entitled to examination and treatment by a physician, rather than by nurses is unsupported by any legal authority."); *White v. Williams*, No. 12-CV-01892, 2016 WL 1237712, at *12 (N.D.N.Y. Jan. 11, 2016), *adopted by* 2016 WL 1239263 (N.D.N.Y. Mar. 29, 2016) (plaintiff's belief that prison nurse should have referred him to a doctor to treat injuries sustained in an attack "amounts to a dispute over the appropriate treatment, and does not state an Eighth Amendment claim"); *Sereika v. Patel*, 411 F. Supp. 2d 397, 407 (S.D.N.Y. 2006) (allegations that plaintiff was examined by physicians assistants rather than a doctor did not state a claim for deliberate indifference).

As set out *supra*, Plaintiff fails to raise any genuine issue of material fact as to whether he suffered a sufficiently serious injury. Additionally, Malark did not act with a sufficiently culpable state of mind when he referred Plaintiff to the medical staff for treatment. Therefore, the motion for summary judgment on the deliberate indifference claim against Malark is granted.

II.   Theory No. 2: Excessive Force

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . . [had] a sufficiently culpable state of mind.'" *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (alterations in original)), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This objective component requires, in the abstract, "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021)

14

(quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)). The subjective component, on the other hand, requires a "showing that 'the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct.'" *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (quoting *Harris*, 818 F.3d at 63). "[T]he test for wantonness is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Fabricio v. Annucci*, 790 F. App'x 308, 310 (2d Cir. 2019) (quoting *Harris*, 818 F.3d at 63).

Of course, in evaluating an excessive force claim, courts must also bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted), and "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotation marks omitted). Still, "[w]hen prison officials maliciously and sadistically use force to cause harm, a plaintiff need not demonstrate significant injury because, in those circumstances, contemporary standards of decency always are violated. Thus, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se*." *Greenburger v. Roundtree*, No. 17-CV-03295, 2020 WL 6561598, at *4 (S.D.N.Y. Jan. 16, 2020) (internal citations and quotation marks omitted), *adopted by* 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020); *see also Wright*, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth

15

Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak."); *White v. Marinelli*, No. 17-CV-01094, 2019 WL 1090802, at *10 (N.D.N.Y. Mar. 8, 2019) ("[P]hysical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment.").

A. Excessive Force (Roser, Lindemann, and Finn)

Plaintiff's claim that Roser, Lindemann, and Finn used excessive force against him at the Green Haven clinic fails on the undisputed facts.

Plaintiff testified that on June 5, 2017, he was having trouble standing outside of the Green Haven clinic and Lindemann grabbed him by the throat to keep him from falling. (Gunn Tr. at 65:11-19, 66:5-11; Def. 56.1 at ¶ 13). Lindemann confirms that he grabbed Plaintiff to keep him from falling but indicates it may have been by the neck rather than throat. (Lindemann Decl. at ¶¶ 5, 7). Even taking Plaintiff's account as true that he was grabbed by the throat, as to the objective prong, nothing about Lindemann's conduct is "*repugnant* to the conscience of mankind" or rises to the dignity of an Eighth Amendment violation. Plaintiff does not provide any detail on the nature of the grab, such as the length of time or amount of force used, and his vague testimony that he was grabbed by the throat "forcefully" (Gunn Tr. at 66:10) is not sufficient to raise Lindemann's use of force above *de minimis*. *See, e.g., Sprau v. Coughlin*, 997 F. Supp. 390, 394 (W.D.N.Y. 1998) (finding *de minimis* use of force where inmate was grabbed from behind the neck and hit several times across the neck, face and eye, resulting in small bump under inmate's eye). The Court further notes that Plaintiff did not complain of an injury or seek medical attention as a result of the grab. (Gunn Tr. at 66:23-67:2, 78:3-6). *See Morocho v. New York City*, No. 13-CV-04585, 2015 WL 4619517, at *9 (S.D.N.Y. July 31, 2015) (granting summary judgment to defendants in an excessive force case where the plaintiff "sought no medical attention . . . and has submitted no

16

medical records or photographs. . . ."); *Murray v. Goord*, 668 F. Supp. 2d 344, 361 (N.D.N.Y. 2009) ("While plaintiff may have suffered injury . . . the *de minimis* nature of this injury is demonstrated in that the record shows that after the initial examination plaintiff did not complain . . . nor did he seek any further medical treatment . . . ."). Accordingly, Plaintiff fails to satisfy the objective prong.

With respect to the subjective prong, Plaintiff does not offer any evidence that Lindemann acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. To the contrary, the parties agree that Lindemann grabbed Plaintiff to keep him from falling. (Gunn Tr. at 65:11-14, 66:5-11; Def. 56.1 at ¶ 13). As such, Lindemann's use of force, *de minimis* as it was, cannot be said to evince "a 'wanton' state of mind." *Perry*, 659 F. Supp. 2d at 583. Thus, Lindemann does not have a sufficiently culpable state of mind to support an excessive force claim under the Eighth Amendment. Movants' motion for summary judgment is granted as to this claim against Lindemann.

Plaintiff also asserts an excessive force claim against Finn and Lindemann for grabbing his hands at the Green Haven clinic. Movants dispute that either Defendant grabbed Plaintiff's hands. (Am. Compl. at ¶¶ 50-51; Answer at ¶¶ 50-51; Finn Decl. at ¶ 6). Plaintiff was given the opportunity to testify about these allegations at his deposition but did not identify any use of force relating to his hands. (Gunn Tr. at 63:3-64:16). Instead, he testified that only Lindemann told him not to move his hands. *Id*. Since there is no other record evidence that the hand-grabbing even

occurred, there is no genuine dispute of fact and summary judgment is granted as to this claim for relief against Finn and Lindemann.[5]

With respect to Roser, the record does not reflect his personal involvement in either Lindemann's or Finn's alleged use of excessive force, as required to establish a § 1983 claim (explained *supra*). Plaintiff claims only that Roser yelled at him at the Green Haven clinic. (Am. Compl. at ¶¶ 44, 46).[6] Accordingly, Movants' motion for summary judgment on Plaintiff's claim for excessive force against Roser is granted.

## CONCLUSION

In light of the foregoing, Movants' motion for partial summary judgment is GRANTED. Plaintiff's deliberate indifference claims against Collins, Lindemann, Soltish, Malark, and Mazzella, and his excessive force claims against Lindemann, Finn, and Roser are dismissed.[7]

Plaintiff's sole remaining claim for relief, excessive force against Petrie, shall proceed to trial. A pretrial conference is scheduled for August 24, 2023 at 2:30 p.m. At the time of the

---

[5] Even considering the events as Plaintiff alleged in his Amended Complaint, Movants' motion must still be granted. *See Castro v. City of New York*, No. 16-CV-08147, 2020 WL 6782000, at *16 (S.D.N.Y. Nov. 18, 2020) ("Although the parties dispute exactly what happened . . . the Court finds that no reasonable juror could conclude that Plaintiff has established an excessive force claim . . . even viewing the evidence in the light most favorable to Plaintiff."). The allegations that, while Plaintiff was not handcuffed, Lindemann "would grab Plaintiff's sore hand" and Finn grabbed Plaintiff's hand and placed it on Plaintiff's leg "with force" amount to a *de minimis* use of force. (Am. Compl. at ¶ 51). *See e.g., James v. Phillips*, No. 05-CV-01539, 2008 WL 1700125, at *5 (S.D.N.Y. Apr. 9, 2008) ("True, plaintiff need not show a significant injury but he must come forward with more than a *de minimis* use of force. In this case, there was nothing more than a shove of an inmate who was not then handcuffed.").

[6] To the extent Plaintiff's claim of excessive force is based on Roser's verbal actions, this conduct would not rise to the level of a constitutional violation. *Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 691 (S.D.N.Y. 2016) ("[C]ourts have consistently held that the mere allegation of verbal abuse, however repugnant it may be, does not rise to the level of a constitutional violation . . . ." (internal quotation marks omitted)).

[7] Given the conclusions reached herein, the Court need not consider whether Movants are entitled to qualified immunity.

conference, all parties shall call: (888) 398-2342; access code: 3456831. Defense counsel is reminded that it is their responsibility to ensure Plaintiff's appearance on that date.

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequence pending at Docs. 73 and 87; (ii) terminate Collins, Lindemann, Soltish, Malark, Finn, Roser, and Mazzella as Defendants in this action; and (iii) mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated:   June 26, 2023
         White Plains, New York

PHILIP M. HALPERN
United States District Judge